FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.
98 JUL 20 AM 9:15
SIGN
RICHARD T. MARTIN
CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | | |
|---|---|---|
| ADVOCACY CENTER<br><br>PLAINTIFF | * | CIVIL ACTION NO. 98-646 |
| | * | SECTION A |
| VS. | * | |
| RICHARD STALDER, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS AND KELLY WARD, WARDEN OF THE DAVID WADE CORRECTIONAL CENTER | * | JUDGE Parke |
| DEFENDANTS | * | MAGISTRATE JUDGE 3 |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION

SUMMARY OF ARGUMENT

Plaintiff is designated by the state of Louisiana as the protection and advocacy system for individuals with disabilities throughout the state. The state receives funding from the federal government and in return must designate a protection and advocacy system under the Developmental Disabilities Assistance and Bill of Rights Act (hereinafter, "DD Act"), 42 U.S.C. §6000, *et seq.*, and the Protection and Advocacy for Individuals with Mental Illness Act (hereinafter, "PAIMI Act"), 42 U.S.C. §10801, *et seq*.

Under the DD and PAIMI Acts, Plaintiff has broad rights of access to Defendant's facilities and facility records for the purpose of monitoring facility conditions, and providing protection and advocacy services to specific individuals. Likewise, individuals


3:98-cv-00646 4 - 1

DATE: 07/20/98 DEPUTY CLERK: BP

C: J UP

within Defendant's facilities have a broad right of access to the protection and advocacy services provided by Plaintiff.

At issue is Plaintiff's basic authority to access an inmate's records with the inmate's consent, pursuant to 42 U.S.C. §10805 (a) (4) (A). Plaintiff is entitled to an injunction in order to fulfill its mandate under the PAIMI Act. Defendant's refusal to comply has severely hampered Plaintiff's ability to promptly and effectively provide protection and advocacy to inmates with mental illness, thereby causing irreparable harm, which outweighs any harm to the Defendant in releasing the requested records. The PAIMI Act is very explicit in its granting of records access to Plaintiff, virtually assuring that Plaintiff will ultimately succeed on the merits of its claim. The release of the records to Plaintiff would cause no harm to others and would enable Plaintiff to continue its responsibility to advocate on behalf of individuals with disabilities.

Although there is no requirement that Plaintiff exhaust remedies before bringing this suit, Plaintiff has tried to negotiate with Defendants to eliminate these illegal and inconsistent policies and practices. However, these efforts have been unsuccessful. Therefore, Plaintiff requests that this court order Defendants to immediately provide Plaintiff access to mental health records in accordance with the PAIMI Act.

## FACTS

Plaintiff was contacted by William Ford, an inmate of David Wade Correctional Center in January, 1998. (See Declaration of Karen J. King, ¶ 1) According to Mr. Ford, he has a history of serious mental illness. He stated that a new physician at David Wade Correctional Center had taken him off all of his medication. He believed that medication was necessary to control his symptoms and that as a result of its discontinuance, his condition was deteriorating. (See Declaration of Karen J. King, ¶ 1) Plaintiff was retained by the inmate to investigate the merits of his issue.

By letter dated February 13, 1998, the Advocacy Center requested the inmate's medical and mental health records pertaining to his mental illness from the facility. The inmate signed a consent to disclosure and waiver of confidentiality form which was attached to the records request. A second request was sent on or about March 9, 1998. (See Declaration of Karen J. King, ¶ 2-3)

Defendant Kelly D. Ward, the warden of the David Wade Correctional Center responded and informed Plaintiff that the requested records would only be released to the courts if ordered by subpoena. (See Declaration of Karen J. King, ¶ 4) Plaintiff was then referred by David Wade Correctional Center to its attorney, Roxie Goynes-Clark. (See Declaration of Karen J. King, ¶ 5)

On or about April 14, 1998, Plaintiff contacted the attorney for the Louisiana Department of Corrections, Roxie Goynes-Clark by letter. (See Declaration of Karen J. King, ¶ 6) Plaintiff notified Defendant of this denial of access and provided Defendant with a copy of the PAIMI Act, specifically referring to the relevant provisions. After receiving no response from the Defendant, Plaintiff's attorney, Karen J. King spoke with Defendant's attorney on June 17, 1998 by telephone. (See Declaration of Karen J. King, ¶ 7) Attorney Goynes-Clark stated that it was Defendant's policy not to release the requested records unless a case is pending or under a court ordered subpoena. She further stated that access is limited to preserve confidentiality and to prevent disclosure of information to the inmate. Plaintiff reiterated its federal authority to access the requested records, as well as the confidentiality and disclosure provisions of the PAIMI Act. Defendants' attorney was to notify Plaintiff of Defendant's decision regarding the release of the requested records by June 18, 1998. She did not do so. Defendants have failed to grant Plaintiff access to medical and mental health records pursuant to the PAIMI Act. (See Declaration of Karen J. King, ¶ 8-9)

Plaintiff is charged with providing protection and advocacy to individuals with mental illness in many residential facilities, including jails and prisons. As a result of

Defendants' refusal to grant Plaintiff access to the inmate's records, Plaintiff has been unable to assess the merits of the inmate's complaint and advocate on his behalf. Defendant has thwarted Plaintiff's ability to fulfill its responsibilities, and individuals with mental illness are being denied meaningful access to Plaintiff's services.

## ARGUMENT

### 1. PLAINTIFF HAS THE AUTHORITY TO ACCESS INMATES IN JAILS AND PRISONS AND THEIR RECORDS PURSUANT TO THE PAIMI ACT.

In response to congressional hearings and investigations evidencing abuse and neglect in state psychiatric facilities, Congress enacted the PAIMI Act, 42 U.S.C. §10801 *et seq.*, in 1986. Congress had previously enacted the DD Act, 42 U.S.C. §6000 *et seq.*, in 1975 to protect the human and civil rights of individuals with developmental disabilities. Protection and advocacy systems (hereinafter "P&As") were established to ensure that these vulnerable populations were protected. Plaintiff is designated as an "eligible system," 42 U.S.C. §10802 (2), and is mandated to investigate and remedy abuse and neglect of persons with mental illness and developmental disabilities, and to provide them with legal representation and advocacy services. See, e.g. 42 U.S.C. §10805 (a) (1) (A) and (B), 42 U.S.C. §6042 (a) (2) (A) and (B).

Courts have consistently held that the DD and PAIMI Acts require states to permit the P&A agency to operate effectively, and with broad discretion and independence in gaining access to facilities and records. See, Mississippi Protection & Advocacy System, Inc. v. Cotten, 929 F. 2d 1054 (5th Cir. 1991); Alabama Disabilities Advocacy Program v. Tarwater Developmental Center, 894 F. Supp. 424 (M.D. Ala. 1995); Michigan Protection & Advocacy Service, Inc. v. Miller, 849 F. Supp. 1202 (W.D. Mich. 1994);

Robbins v. Budke, 739 F. Supp. 1479 (D.N.M. 1990). The court in Cotten expounded upon this obligation as follows:

> The Act not only describes the range of services to be provided by the protection and advocacy systems, it also states that the systems "must have the authority" to perform these services. The state cannot satisfy the requirements of the [DD Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority.

929 F. 2d at 1029. (Emphasis added). As the court in Tarwater noted, any other reading "would attribute to Congress an intent to pass an ineffective law." 824 F. Supp. at 429. It was also Congress' intent that the DD and PAIMI Acts be applied in a like manner. See, e.g., S. Rep. No. 109, 99th Cong., 1st Sess. 3 (1986); S. Rep. 113, 100th Cong., 1st Sess. 24 (1987). Accordingly, the courts' reasoning applies with equal force to the PAIMI Act.

Defendants' denial of Plaintiff's records access has created a ripple effect, impacting the rights of individuals with mental illness to access Plaintiff's services. Defendants' actions have caused a four month delay, during which time Plaintiff was unable to provide services to an eligible individual. The court in Robbins held that delays of up to one month in processing requests for the release of records may preclude the P&A "from acting with prescribed deadlines or may cause a violation to go unaddressed until it is too late to remedy." 739 F. Supp. at 1488.

In Robbins, the New Mexico P&A challenged, under the PAIMI Act, a highly restrictive patient and records access policy imposed by a State mental health facility. The court ordered the facility to "provide immediate access to all records, including incident reports, medical referrals, seclusion and restraint logs, and internal investigation reports which may not be in residents' charts with informed consent provided by the resident or guardian or as provided [in the access provisions of the PAIMI Act]." Id. at 1489. Though instant case involves a prison, rather than a psychiatric facility, the PAIMI Act clearly defines "facilities" to include jails and prisons. 42 U.S.C. §10802(3).

Neither Department policy nor state law may preempt Plaintiff's authority to access mental health records. The Department of Health and Human Services (hereinafter "DHHS") is the federal agency responsible for implementing the PAIMI Act. In the preamble to the regulations it promulgated to implement the Act, DHHS stated that, "...State law must not diminish the required authority of the Act and the P&A system may exercise its authority under State law where the authority exceeds the authority required by the Act." See 62 Fed. Reg. 53559-60, October 15, 1997. Arguments that the regulations appear to allow access to records which in a number of States are confidential by law were rejected by DHHS. Id. DHHS specifically noted that, "In order for the P&A system to carry out is mandate to protect the rights of individuals with mental illness and to investigate allegations of abuse and neglect in public and private facilities, they must be empowered to access information contained in all records relevant to such activities. In all circumstances where there is a direct conflict these regulations will supersede State law unless State law gives greater access." Id., See also 42 U.S.C. §10806 (b) (2) (C).

Defendants' actions are not necessary to preserve confidentiality and prevent disclosure of information to the individual who is the subject of the information. The PAIMI Act contains clear provisions to address this concern. When accessing records which, under Federal or state law, are required to be maintained in a confidential manner by a service provider, the P&A must maintain the confidentiality of the records to the same extent as the provider of services. 42 U.S.C. §10806 (a), (b) (1). Further, the P&A may not disclose information from the records to the individual who is the subject of the information if the responsible mental health professional provides the P&A with a written statement that disclosure would be detrimental to the individual's health. Id.

The law is abundantly clear that Plaintiff has the authority to access the records of inmates with mental illness with their consent. Defendants' actions have prevented

Plaintiff from fulfilling its federal mandate, and have prevented inmates with mental illness from accessing Plaintiff's services.

2. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION TO FULFILL ITS MANDATE UNDER THE PAIMI ACT.

In granting preliminary injunctive relief, courts look at four factors to determine whether such a motion should be granted: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is undermined by the issuance of the injunction. Giddens v. City of Shreveport, 901 F. Supp. 1170 (W.D. La. 1995). Application of this analysis shows that Plaintiff is entitled to preliminary injunctive relief.

As argued above, the PAIMI Act is explicit in defining jails and prisons as "facilities" for purposes of the PAIMI Act. 42 U.S.C. §10802 (3). Further, Plaintiff has the authority to access all records of individuals with mental illness with their consent. §10805 (a) (4) (A). It is also clear that Congress intended Plaintiff's access authority to supersede conflicting state law. 42 U.S.C. §10806 (b) (2) (C).

Plaintiff will be irreparably harmed if the preliminary injunction is not issued. Plaintiff is unable to perform its statutory functions without the access rights at issue in this case. Likewise, the inmates of Defendants' facilities will suffer irreparable harm. In Cotten, supra the Fifth Circuit said that further imposition of undue limitations on P&A access presented an immediate and realistic threat of genuine harm to all facility residents. 929 F. 2d 1058.

There is no risk of harm in granting the preliminary injunction. The DD and PAIMI Acts are evidence of a strong public interest in protecting the legal rights of

individuals with disabilities. Issuance of a preliminary injunction in this case would only advance the public interest that is the very basis for the DD and PAIMI Acts.

WHEREFORE, Plaintiff requests that this Court enter a preliminary injunction as prayed for in its Complaint.

Respectfully submitted:

Nell Hahn, Bar No. 22406, T.A.
Advocacy Center
515 So. College Road, Suite 130
Lafayette, LA 70503
(318) 237-7380
(318) 237-0486 FAX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | | |
|---|---|---|
| ADVOCACY CENTER<br><br>PLAINTIFF | * * * * | CIVIL ACTION NO.__________ |
| | * * | SECTION __________ |
| VS. | * * | |
| RICHARD STALDER, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS AND KELLY WARD, WARDEN OF THE DAVID WADE CORRECTIONAL CENTER | * * * * * * * | JUDGE __________ |
| DEFENDANTS | * | MAGISTRATE JUDGE ________ |

DECLARATION OF KAREN J. KING

I, Karen J. King, attorney-at-law and counsel for the Advocacy Center, do hereby declare:

1. On or about January 30, 1998, the Advocacy Center received a complaint from William Ford, an inmate at the David Wade Correctional Center that he was not receiving appropriate treatment for his mental illness. Specifically, he complained that the medication treatment for his mental illness had been discontinued, causing a deterioration in his condition.

2. In order for the Advocacy Center to investigate the inmate's complaint and advocate on his behalf, it needs access to his medical and mental health records. Mr. Ford has given his written consent, a true copy of which is attached hereto as Attachment A, to our obtaining his records.

3. After we received Mr. Ford's complaint, Barbara Washington, a paralegal with the Advocacy Center, acting under my supervision, sent a letter to the Medical Director

at Wade Correctional Center requesting Mr. Ford's medical and mental health records on February 13, 1998. Mr. Ford's written consent form was attached to her request. A true copy of Ms. Washington's February 13, 1998 letter to the Medical Director is attached hereto as Attachment B.

4. On or about March 9, 1998, Ms. Washington sent a second request for information to Wade Correctional Center, after receiving no response from the facility regarding her initial request. A true copy of Ms. Washington's March 9, 1998 letter to Wade Correctional Center is attached hereto as Attachment C.

4. Kelly D. Ward, Warden for Wade Correctional Center, responded to the Advocacy Center's request by letter dated March 31, 1998. Mr. Ward stated that he would only release Mr. Ford's mental health records to the courts through subpoena. A true copy of Mr. Ward's letter is attached hereto as Attachment D.

5. After being notified of Wade Correctional Center's response to our request, I telephone the facility on April 14, 1998 and was referred by the Warden's office to their attorney, Roxie Goynes-Clark.

6. By letter dated April 14, 1998, I notified Ms. Goynes-Clark of the facility's denial of access to records and provided her with a copy of the PAIMI Act. I specifically referred her to the relevant provisions. A true copy of my letter to Ms. Goynes-Clark is attached hereto as Attachment E.

7. After I did not receive a response to my April 14th letter, I began calling Ms. Goynes-Clark. I was able to reach Ms. Goynes-Clark by phone on June 17, 1998. In this conversation, I explained our right to access the requested records. Ms. Goynes-Clark reiterated the Department of Corrections policy of not releasing records unless they are involved in a court case or under court ordered subpoena. I stated that such a position in light of our federal authority would make the PAIMI Act unenforceable. I also explained that the PAIMI Act contained confidentiality safeguards regarding the release of records

to the Advocacy Center. Ms. Goynes-Clark told me that she would speak with Warden Kelly and contact me on June 18, 1998 with their decision.

8. Ms. Goynes-Clark has not contacted me since our telephone conversation on June 17, 1998.

9. On June 29, 1998, I telephoned Annette Viator, General Counsel for the Department of Corrections and left a message requesting that she call me regarding Mr. Ford's case. I did not receive a return phone call from Ms. Viator.

I DECLARE under penalty of perjury that the above statements are true and correct.

Signed this 17th day of July, 1998.

Karen J. King

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE DIVISION

| | | |
|---|---|---|
| ADVOCACY CENTER<br><br>PLAINTIFF | * | CIVIL ACTION NO.___________ |
| | * | SECTION ___________ |
| VS. | * | |
| RICHARD STALDER, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS AND KELLY WARD, WARDEN OF THE DAVID WADE CORRECTIONAL CENTER | * | JUDGE ___________ |
| DEFENDANTS | * | MAGISTRATE JUDGE ________ |

## CERTIFICATE OF COUNSEL

I, Nell Hahn, counsel for the Advocacy Center, declare as follows:

1. On July 17, 1998 at approximately 2:15 p.m., I informed Roxie Goynes-Clark, attorney for the Louisiana Department of Public Safety and Corrections, that the Advocacy Center intended to file these proceedings and request a temporary restraining order on Monday morning, July 20, 1998. She gave me her fax number and requested that the pleadings be faxed to her office.

2. I faxed Ms. Goynes-Clark a letter confirming our phone conversation at approximately 2:45 p.m. on July 17, 1998. A true and correct copy of that letter is

attached. The fax transmission report shows that the letter was received at the number she gave me.

3. I faxed the Complaint, Motion and Order for Temporary Restraining Order, Motion for and Order Preliminary Injunction, Memorandum in Support of the Motion for Preliminary Injunction, and the Declaration of Karen King to Ms. Goynes-Clark at approximately 3:45 p.m. on July 17, 1998. The fax transmission report shows that these documents were received at the number she gave me.

4. At approximately 4:45 p.m. on July 17, 1998, Karen King, another attorney in my office, spoke by phone with Ms. Goynes-Clark, who indicated that she had received the pleadings and was aware that the suit and request for temporary restraining order would be filed and presented to the Court on Monday, July 20, 1998.

I declare under penalty of perjury that the above statements are true and correct. Signed this 17th day of July, 1998.

Nell Hahn




FOR THE ELDERLY & DISABLED
The Protection and Advocacy System for Louisiana

**CONSENT TO DISCLOSURE OF MEDICAL RECORD**
**WAIVER OF CONFIDENTIALITY**

I, WILLIAM FORD, understand that the information contained in my son'S medical record is confidential. However, I specifically give my consent for
**WADE CORRECTIONAL CENTER MEDICAL RECORDS**

to release the following information:

1. Access to all records

2. Copies of all requested information including narratives, test results, discharge summaries, physicians narratives and any other information requested.

3. Permission to communicate with staff as needed.

Such information is to be used solely for the purpose of assisting the ADVOCACY CENTER FOR THE ELDERLY & DISABLED in

its representation of **MY MEDICAL TREATMENT.**

The above listed information is to be disclosed for the specific purpose of:

**CARE AND TREATMENT.**

This consent is subject to written revocation at any time except to the extent that action has already been taken in reliance upon this consent. This consent will automatically expire in ninety (90) days from the date hereof.

It is further understood that the information released is for professional purposes only and may not be provided in whole or part to any other agency, organization, or person other than that stated above.

DATED this 26 day of January, 1998.

SIGNATURE: William Ford, Jr. #98417
Client or parent

WITNESS: [signature]

2620 CENTENARY BLVD., BLDG. 2 SUITE 248 SHREVEPORT, LOUISIANA 71104
(318) 227-6186 VOICE and TDD
(318) 227-1841 FAX
TOLL FREE 1-800-960-7705

ATTACHMENT B




FOR THE ELDERLY & DISABLED
The Protection and Advocacy System for Louisiana

February 13, 1998

Wade Correctional Institute
Medical Director
Route 2, box 75
Homer, La. 71040

Re: William Ford #98417

Dear Director,

Attached you will find a consent for release of information to our Agency. We are requesting any information concerning Mr. Ford's mental illness. We are concerned that he is no longer receiving treatment and medication for his illness.

After we receive this information, we would like for you or your designee, to set some time aside in order for us to discuss the information.

Your prompt attention to this matter will be greatly appreciated. If you have any questions please feel free to contact us.

Thank you.

Barbara J. Washington
Client Advocate Paralegal

bjw; attachment

2620 CENTENARY BLVD., BLDG. 2 SUITE 248 SHREVEPORT, LOUISIANA 71104
(318) 227-6186 VOICE and TDD
(318) 227-1841 FAX
TOLL FREE 1-800-960-7705

ATTACHMENT C

ADVOCACY CENTER

FOR THE ELDERLY & DISABLED

The Protection and Advocacy System for Louisiana

March 9, 1998

Wade Correctional Institute
Medical Director
Route 2, box 75
Homer, La. 71040

Re: William Ford #98417

Dear Director,

This is a second request for information. We are requesting any information concerning Mr. Ford's mental illness. We are concerned that he is no longer receiving treatment and medication for his illness.

After we receive this information, we would like for you or your designee, to set some time aside in order for us to discuss the information.

Your prompt attention to this matter will be greatly appreciated. If you have any questions please feel free to contact us.

Thank you.

Barbara J. Washington
Client Advocate Paralegal

bjw; attachment

2620 CENTENARY BLVD., BLDG. 2 SUITE 248 SHREVEPORT, LOUISIANA 71104

(318) 227-6186 VOICE and TDD
(318) 227-1841 FAX
TOLL FREE 1-800-960-7705

ATTACHMENT D



# Department of Public Safety and Corrections

M. J. "Mike" Foster, Jr., Governor | Kelly D. Ward, Warden | Richard L. Stalder, Secretary

March 31, 1998

Ms. Barbara J. Washington
Advocacy Center for the Elderly and Disabled
Suite 248
2620 Centenary Blvd., Bldg. 2
Shreveport, LA 71104

RE: William Ford, #98417

Dear Ms. Washington:

Thank you for your recent correspondence regarding William Ford, DOC #98417.

Unfortunately, I cannot honor your request for inmate Ford's psychiatric records. I am charged with the responsibility of making such records available on a case-by-case basis. It is my determination that such records will not be released except to the courts through subpoena. The court may at that time review the records and make a ruling as to whether the information should be made available to the entity who caused the subpoena to be issued. I do, of course, abide by any ruling the court may make.

Your interest in and concern for inmate Ford's welfare is certainly appreciated. We also at this institution are concerned with his welfare and make every effort to provide for his medical and mental health needs as appropriate.

Sincerely,

Kelly D. Ward
Warden

KDW/fr

cc: Case Record
Reading File

David Wade Correctional Center • 661 Bell Hill Road • Homer, Louisiana 71040
AN EQUAL OPPORTUNITY EMPLOYER

ATTACHMENT E




The Protection and Advocacy System for Louisiana

April 14, 1998

Ms. Roxie Goynes-Clark
Attorney
Department of Public Safety and Corrections
PO Box 94304, Capitol Station
Baton Rouge, LA 70804-9304

Re: David Wade Correctional Center
William Ford, #98417

Dear Ms. Goynes-Clark:

The Advocacy Center is the designated protection and advocacy system (P&A) for the state of Louisiana. Under the PAIMI (Protections and Advocacy for Individuals with Mental Illness) Act, 42 U.S.C. 10801 et seq. (copy enclosed), the Advocacy Center maintains Louisiana's PAIMI program. The PAIMI program offers protection from abuse and neglect, and advocacy for legal rights, for individuals with mental illness while they are in residential facilities.

Recently, the Advocacy Center was contacted by Mr. William Ford regarding his mental health treatment at the above-referenced facility. Pursuant to our authority under the PAIMI Act and a signed release from Mr. Ford, we requested a copy of Mr. Ford's mental health records.

By letter dated March 31, 1998, Warden Kelly Ward responded to our request stating that he had determined that Mr. Ford's psychiatric records would only be released through a court ordered subpoena (copy enclosed).

Under federal law, specifically, 42 U.S.C. 10802(3) and 10805(a)(4), the Advocacy Center is entitled to access Mr. Ford's records with his consent. The PAIMI Act defines facilities to include jails and prisons.

Please consult the enclosed documents and review Warden Ward's denial of our access to Mr. Ford's records. I do not think it would be a good use of anyone's' time to litigate this issue when the law is clear.

Thanking you in advance for your cooperation, I am

Sincerely,

Karen J. King
Attorney

KJK/ch

515 S. College Rd. • Suite 130 • Lafayette, LA 70503
318-237-7380 Voice & TTY • Fax 318-237-0486 • Toll Free 1-800-960-7705