```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF LOUISIANA
                       BATON ROUGE DIVISION
```

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

99 MAR 26 AM 9: 50

RICHARD T. MARTIN
CLERK

| | | |
|---|---|---|
| ADVOCACY CENTER | * | CIVIL ACTION NO. 98-646 |
| PLAINTIFF | * | |
| | * | SECTION A |
| VS. | * | |
| RICHARD STALDER, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS AND KELLY WARD, WARDEN OF THE DAVID WADE CORRECTIONAL CENTER | * | JUDGE PARKER |
| DEFENDANTS | * | MAGISTRATE JUDGE DALBY |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### SUMMARY OF ARGUMENT

Plaintiff is designated by the state of Louisiana as the protection and advocacy system for individuals with disabilities throughout the state. The state receives funding from the federal government, and in return must designate a protection and advocacy system under the Developmental Disabilities Assistance and Bill of Rights Act (hereinafter, the "DD Act"), 42 U.S.C. §6000, *et seq.*, and the Protection and Advocacy for Individuals with Mental Illness Act (hereinafter, "PAIMI Act"), 42 U.S.C. §10801, *et seq.*

Under the DD and PAIMI Acts, protection and advocacy systems such as the Advocacy Center have the right to access confidential records of individuals with mental illness for the purpose of monitoring facility conditions and providing protection and advocacy services to specific individuals. The federal statute that creates these rights explicitly provides that they supersede any State law prohibiting such access. Therefore, to the extent that L.R.S. §15.574.12 prohibits the Advocacy Center's from obtaining inmates' treatment records, it is superseded by federal law. Plaintiff is entitled to a

JVP

1



declaration of its right to access inmates' records as provided by the PAIMI Act, and to an injunction requiring Defendants to grant it such access.

FACTS

The Advocacy Center is designated by the state of Louisiana as the protection and advocacy system for individuals with disabilities throughout the state. [Complaint, Part III, paragraph 3; Answer, paragraph 3] The state receives funding from the federal government and, in return, must designate a protection and advocacy system (sometimes referred to herein as a "P&A") under the Developmental Disabilities Assistance and Bill of Rights Act (hereinafter, "DD Act"), 42 U.S.C. §6000, *et seq.*, and the Protection and Advocacy for Individuals with Mental Illness Act (hereinafter, "PAIMI Act"), 42 U.S.C. §10801, *et seq.*

On or about January 30, 1998, the Advocacy Center received a letter from William Ford, an inmate at David Wade Correctional Center, stating that his medication for his mental illness had been discontinued, and that his condition was deteriorating as a result. [Declaration of Karen J. King in support the Motion for Temporary Restraining Order, paragraph 1]. Karen King, an attorney with the Advocacy Center, determined that she needed access to Mr. Ford's medical and mental health records in order to investigate his complaint. The Advocacy Center subsequently obtained Mr. Ford's written consent to the release of his records. On February 13, 1998, the Advocacy Center sent a letter to the Medical Director for David Wade Correctional Center, enclosing the consent form, and requesting Mr. Ford's medical records. [Declaration of Karen J. King in support the Motion for Temporary Restraining Order, paragraphs 2 - 4, attachments A - C].

In correspondence and telephone conversations that took place between March and June, 1998 [*Id.*, paragraphs 3 - 7], Defendants refused to release the records to the Advocacy Center as requested, claiming that such records were confidential under the provisions of L.R.S. §15:574.12, and would not be released except to a court *in camera*, if a subpoena were sought. [Answer, paragraph 5, subparagraphs 3 and 5].

2

This case was filed on July 20, 1998, and a temporary restraining order was entered on that day, requiring Defendant to give the Advocacy Center Mr. Ford's records. The records were given to Plaintiff pursuant that order.

Plaintiff is a non-profit corporation charged with providing protection and advocacy services to individuals with mental illness in many residential facilities, including jails and prisons. As a result of Defendants' refusal to grant the Advocacy Center access to the inmate's records, it was unable to assess the merits of the inmate's complaint, and to properly advise him, for a period of several months. This detracted from the Advocacy Center's ability to fulfill its responsibilities, and denied Mr. Ford his right of access to Plaintiff's services. The Advocacy Center had to devote scarce resources to litigating its right to obtain an inmate's mental health records, rather than to providing the other protection and advocacy services that make up its mandate.

ARGUMENT

1. PLAINTIFF HAS THE AUTHORITY UNDER THE PAIMI ACT TO ACCESS RECORDS OF PRISON INMATES WITH MENTAL ILLNESS

In response to congressional hearings and investigations evidencing abuse and neglect in state psychiatric facilities, Congress enacted the PAIMI Act, 42 U.S.C. §10801 *et seq.*, in 1986. Congress had previously enacted the DD Act, 42 U.S.C. §6000 *et seq.*, in 1975, to protect the human and civil rights of individuals with developmental disabilities. Protection and advocacy systems were established to ensure that these vulnerable populations were protected. Plaintiff is designated as an "eligible system," 42 U.S.C. §10802 (2), and is mandated to investigate and pursue legal remedies for abuse and neglect of persons with mental illness and developmental disabilities, and to provide them with legal representation and advocacy services. See, e.g. 42 U.S.C. §10805(a)(1)(A) and (B), 42 U.S.C. §6042(a)(2)(A) and (B).

The protection and advocacy system's mandate extends to "individuals with mental illness" who reside in facilities rendering care and treatment, 42 U.S.C. §10802(4)(B)(i).

3

Such "facilities," as defined by statute, explicitly include prisons, 42 U.S.C. §10802(3); 42 C.F.R. §51.2. According to federal statutes and regulations, 42 U.S.C. §§10805(a)(4) and 10806, 42 C.F.R. §51.41, protection and advocacy systems must have access to facilities and to records of individuals with mental illness.

Courts have consistently held that the DD and PAIMI Acts require states to permit the P&A agency to operate effectively, and with broad discretion and independence in gaining access to facilities and records.[1] See *Mississippi Protection & Advocacy System, Inc. v. Cotten*, 929 F.2d 1054 (5th Cir. 1991); *Alabama Disabilities Advocacy Program v. Tarwater Developmental Center*, 894 F.Supp. 424 (M.D. Ala. 1995), *aff'd*, 97 F.3d 492 (11th Cir., 1996); *Oklahoma Disability Law Center, Inc. v. Dillon Family & Youth Services, Inc.*, 879 F.Supp. 1110 (N.D.Okla. 1995); *Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F.Supp. 1202 (W.D. Mich. 1994); *Robbins v. Budke*, 739 F.Supp. 1479 (D.N.M. 1990). The court in *Cotten* expounded upon this obligation as follows:

> "The Act not only describes the range of services to be provided by the protection and advocacy systems, it also states that the systems "must have the authority" to perform these services. The state cannot satisfy the requirements of the [DD Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority."

929 F. 2d at 1029. (Emphasis added). As the court in *Tarwater* noted, any other reading "would attribute to Congress an intent to pass an ineffective law." 824 F. Supp. at 429.

Defendants' denial of Plaintiff's records access unacceptably delayed Plaintiff's ability to provide services to an eligible individual. Regulations promulgated by the United States Department of Health and Human Services (hereinafter "DHHS") to implement the

---

[1] It was Congress' intent that the DD and PAIMI Acts be applied in a like manner. *See* S.Rep. No. 109, 99th Cong., 1st Sess. 3 (1986); S.Rep. 113, 100th Cong., 1st Sess. 24 (1987), 1987 U.S.C.C.A.N. 781, 803-04; *Alabama Disabilities Advocacy Program v. Tarwater Developmental Center*, *supra*, 894 F. Supp. at 428.

4

PAIMI Act, as authorized by 42 U.S.C. §10826(b), provide: "Access to records shall be extended promptly to all authorized agents of a P&A system," 42 C.F.R. §51.41(a).

In *Oklahoma Disability Law Center, Inc. v. Dillon Family & Youth Services, Inc.*, *supra*, the Court invalidated a state statute requiring a court order before turning over psychiatric records to patients or their legal representatives. The protection and advocacy system had sought the records of two minors who had been residents of a private psychiatric facility, and the facility had refused, citing the state statute. The court held that requiring a hearing and a court order in order to access records would strip "the timely access guaranteed by the Act" of all meaning. *Id.* at 1112.

Similarly, in *Robbins v. Budke*, *supra*, the New Mexico protection and advocacy system challenged a State mental health facility's highly restrictive patient and records access policy, which caused delays of up to one month for access to a patient's records. The court found that the hospital's failure to institute a procedure that ensured prompt compliance with a request for patient records precluded the protection and advocacy system from evaluating and acting on the patient concerns in a timely manner, contravening PAIMI. The court emphasized the importance of access to records to allow the protection and advocacy system to evaluate its clients' concerns, determine whether a client has a legal claim, and communicate with the clients, and found that delays in records access "may cause a violation of rights to go unaddressed until it is too late to remedy," 739 F.Supp. at 1488. It ordered the facility to "provide immediate access to all records, including incident reports, medical referrals, seclusion and restraint logs, and internal investigation reports which may not be in residents' charts with informed consent provided by the resident or guardian or as provided by 42 U.S.C. §§10805(a)(4) and 10806." *Id.* at 1489.

2. NEITHER DEPARTMENT POLICY NOR STATE LAW MAY RESTRICT PLAINTIFF'S AUTHORITY TO ACCESS MENTAL HEALTH RECORDS AS PROVIDED IN THE PAIMI ACT.

The PAIMI Act explicitly provides that the provisions of 42 U.S.C. §§10805(a)(4) granting P&A's access to records would not apply for a maximum of two years after the Act's effective date, to States whose laws prohibited such access. 42 U.S.C. §10806(b)(2)(C). By implication, if a state did not remove such a prohibition within that two year period, it is clear that the PAIMI Act's access provisions would supersede any conflicting State law. According, the regulations implementing the law provide:

> "A P&A system may exercise its authority under State law where the authority exceeds the authority required by the Act. However, State law must not diminish the required authority of the Act."

42 C.F.R. §51.31(i).

In the preamble to the regulations, DHHS rejected arguments that State confidentiality laws should supersede provisions of the PAIMI Act giving protection and advocacy systems access to records, and explained:

> "It is clearly the intent of the Act that the system have full access to 'all records of an individual' pertaining to a full investigation of a report or complaint. The only exception noted [Senate Report 102-114, 102nd Congress, 1st Sess. 5, 1991] is the Joint Commission of Accreditation of Hospitals Report—peer review/medical review records. In order for the P&A system to carry out its mandate to protect the rights of individuals with mental illness and to investigate allegations of abuse or neglect in public and private facilities, they must be empowered to access information contained in all records relevant to such activities. In all circumstances where there is a direct conflict these regulations will supersede State law unless State law gives greater access."[2]

62 Fed. Reg. 53559-60, October 15, 1997.

Defendants' actions are not necessary to preserve confidentiality and prevent disclosure of information to the individual who is the subject of the information. The PAIMI Act contains clear provisions to address this concern. When accessing records

---

[2] The Department went on to except the records of medical care evaluation or peer review committees, 42 C.F.R. 51.41(c)(4), and to provide that States could require P&A's to follow specific State procedures with regard to personnel records.

6

which, under Federal or state law, are required to be maintained in a confidential manner by a service provider, the protection and advocacy system must maintain the confidentiality of the records to the same extent as the provider of services. 42 U.S.C. §10806(a). Further, the P&A may not disclose information from the records to the individual who is the subject of the information if the responsible mental health professional provides the P&A with a written statement that disclosure would be detrimental to the individual's health. 42 U.S.C. §10806(b)(1).

The law is abundantly clear that Plaintiff has the authority to access the records of inmates with mental illness with their consent. Defendants' actions have prevented Plaintiff from fulfilling its federal mandate, and have interfered with inmates with mental illness who sought to access Plaintiff's services.

3.   PLAINTIFF IS ENTITLED TO A DECLARATION OF ITS RIGHTS AND INJUNCTION TO RESTRAIN DEFENDANTS FROM INTERFERING WITH ITS MANDATE UNDER THE PAIMI ACT.

The issue presented in this case is whether the Department of Public Safety and Corrections must give the Advocacy Center ready access to records of individuals with mental illness according to the terms of the PAIMI Act. Though the records of William Ford have been supplied to the Advocacy Center pursuant to the temporary restraining order in this case, the issue of Plaintiff's right to these records has not been finally decided. The Advocacy Center is entitled to declaratory and injunctive relief, both to determine the merits of the controversy involving the Ford records, *see Alabama Disabilities Advocacy Program v. Tarwater Developmental Center, supra,* 97 F.3d at 496, *citing Church of Scientology of California v. United States,* 506 U.S. 9, 11-12, 113 S.Ct. 447, 449 (1992) (affirming injunction granting access to records--case was not moot though records had been provided pursuant to lower court order); and because otherwise the Department's policy of unlawful denial of access to records will completely evade review, *see Alabama Disabilities Advocacy Program, supra,* 97 F.3d at 496, n. 1; *see also Mississippi*

*Protection & Advocacy System, Inc. v. Cotten, supra* at 1058 (plaintiff who had retained the P&A as counsel permitted to represent class in claim that the state's restrictions on access to the P&A violated the DD Act.)

As noted above, there is no harm to Defendants in granting an injunction, because of the PAIMI Act provisions discussed above regarding the Advocacy Center's obligation to maintain the confidentiality of these records. Further, the strong public policy expressed in the PAIMI Act militates in favor of granting the relief sought.

Were this Court to decline to declare Plaintiff's right to records and to order Defendants to conform their conduct to the PAIMI Act, the Advocacy Center would be unable to obtain an effective remedy. Every time the Advocacy Center needed to access records of an inmate with mental illness, it would have to seek a subpoena and court order, as it has had to do in this case. If Defendants, as in this case, then produced the records, the Advocacy Center would have no way of obtaining review of its claim that this cumbersome procedure violates the law. A declaration of Plaintiff's rights of access under PAIMI, and an injunction making sure that these rights are honored by the wardens of all Department facilities, is necessary to effectuate the purpose of this important federal law.

Date: March 25, 1999

Respectfully submitted,

*[signature]*

Nell Hahn, T.A., Bar No. 22406
Advocacy Center
515 S. College Road, Suite 130
Lafayette, LA 70503
(318) 237-7380
(318) 237-0486 FAX

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing Memorandum in Support of Plaintiff's Motion for Summary Judgment was served on Defendant by mailing a copy by U.S. mail, postage prepaid, on Roxie F. Goynes-Clark, Attorney for Defendants, P.O. Box 94304, Capitol Station, Baton Rouge, LA 70804-9304, on the _____ 25th day of March, 1999.

_____
NELL HAHN