UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA



FILED
U.S. DIST. COURT
 ... OF LA.

99 JUL 30 PM 2: 16

SIGN_____
RICHARD T. MARTIN
            CLERK

| | |
|---|---|
| THE ADVOCACY CENTER | CIVIL ACTION |
| VERSUS | |
| RICHARD STALDER, ET AL | NO. 98-646-A |

## RULING ON MOTIONS

This matter is before the court on a motion for summary judgment by the plaintiff, the Advocacy Center, and a cross-motion for summary judgment by the defendants, Richard Stalder, Secretary of the Louisiana Department of Public Safety and Correction, and Kelly Ward, Warden of the David Wade Correctional Center. No opposition has been filed by the defendants to the plaintiff's motion for summary judgment. However, opposition has been filed by the plaintiff to the cross-motion made by the defendants. There is no need for oral argument. Jurisdiction is allegedly based upon a federal question, 28 U.S.C. § 1331 as it pertains to 42 U.S.C. § 1983 and the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. § 10801, et seq.

DKT. & ENTERED

DATE_____
NOTICE MAILED TO:
DATE 7/30/99 BY bw

GC
PH
DLD
JS



## I. STATUTORY AND FACTUAL BACKGROUND

In 1985, the Congress concluded that the rights of the mentally ill were not being protected and therefore, adopted the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAMII Act"), 42 U.S.C. §10801, et seq. (" the PAMII Act"). Under the PAMII Act, eligible protection and advocacy systems receive certain allotments if they provide for (1) "protect[ing] and advocat[ing] the rights of individuals with mental illness" and (2) "investigat[ing] claims of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred".[1] The Advocacy Center is designated as an "eligible system" appointed in the State of Louisiana to protect and advocate the rights of the mentally ill under the PAMII Act.[2]

The PAMII Act's stated purpose is:

1) to ensure that the rights of individuals with mental illness are protected; and

---

[1] 42 U.S.C.A. § 10803

[2] In 1975, the Congress also adopted the Developmental Disabilities and Bill of Rights Act, 42 U.S.C. § 6000 et seq. ("DD Act"), to protect the rights of the **developmentally disabled**, rather than the mentally ill. Under the DD Act, the federal government provides funds to assist states in providing services for people with developmental disabilities. In return, the state must establish a protection and advocacy system to investigate reports of abuse and neglect of these individuals. The Advocacy System represents both classes of people, and similar systems in other states have been confronted with the "access" issue under both the DD Act and the PAMII Act; therefore, case law under the DD-Act is helpful to the court in determining right to access under the PAMII Act. However, the plaintiff in this case has not sought declaratory or injunctive relief under the DD Act and there is no indication that the defendants have violated the rights of the developmentally disabled. Therefore, the case is limited to the right to access individuals of the mentally ill as defined in the PAMII Act.

 2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will
   A) protect and advocate the rights of such individuals....; and
   B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.[3]

The PAMII Act provides, among other things, that a protection and advocacy system such as the Advocacy Center shall function independently of any state agency which provides treatment to the mentally ill.[4]  To achieve its purpose, the PAMII Act gives state systems the authority to independently investigate reported or probable instances of abuse and neglect and to pursue administrative, legal, and other appropriate remedies to insure protection of the mentally ill who are either receiving care and treatment, or who have been recently discharged from institutions within the state.[5]

To insure the investigatory role of the system, the Congress provided that the center "shall have access to all records of any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal guardian, has authorized the system to have such access."[6]  Access to records shall also be

---

[3] 42 U.S.C. § 10801

[4] 42 U.S.C. §§ 10805(a)(2)

[5] 42 U.S.C. §§ 10805(a)(1)

[6] 42 U.S.C. §10805(a)(4)

granted when there is a complaint received.[7]  Access to records shall be extended promptly to all authorized agents of a protection and advocacy system.[8]

In January of 1998, the Advocacy Center received a complaint by William Ford, an inmate at the David Wade Correctional Center.  Ford, who has a history of mental illness for which he was receiving treatment and medication, claimed that a new physician had taken him off of his medication.  Ford believed the medication was necessary to control his symptoms and that the discontinuance of the medication resulted in his condition deteriorating.

On February 13, 1998, the Advocacy Center requested, in writing, to the David Wade Correctional Center, the medical and mental health records of Ford.  The request was accompanied by a consent form and a waiver of confidentiality signed by Ford.  However, no records were received by the Advocacy Center.  On March 9, 1998, a second request was sent, but no records were produced.

---

[7] 42 U.S.C. §§ 10805(a)(4)(C)
 [A]ny individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever
(i) such representative has been contacted by such system upon receipt of the name and address of such representative;
(ii) such system has offered assistance to such representative to resolve the situation;  and
(iii) such representative has failed or refused to act on behalf of the individual;

[8] **Robbins v. Budke**, 739 F. Supp. 1479 (D.N.M. 1990).

In response to the two requests, the defendant Kelly Ward, the Warden of the David Wade Correctional Center, stated that an inmate's records would only be released to the court for an *in camera* inspection. Conversations between the Advocacy Center and Roxie F. Gaynes-Clark, the defendants' counsel, produced the same result. The Advocacy Center was told by Ms. Gaynes-Clark that "in accordance with LSA-R.S. 15:572.12, that these records were confidential and must be submitted *in camera* before release".[9]

On July 20, 1998, the Advocacy Center filed a complaint in the United States District Court pursuant to 42 U.S.C. § 1983. In the complaint, plaintiff requests both declaratory and injunctive relief as to it rights under the PAMII Act. Soon after the Advocacy Center filed its complaint, it moved for a temporary restraining order to have the records of Mr. Ford turned over to it. On July 20, 1998, this court granted the temporary restraining order and the records of Mr. Ford were released.

The Advocacy Center now moves for summary judgment claiming that under the PAMII Act, it has the authority to access the records of prison inmates with mental illnesses and neither the departmental policy of the defendants nor state law may restrict its authority to access these records. The Advocacy Center seeks a declaration of its rights under the PAMII Act and an injunction restraining the defendants from interfering with its mandate to provide protection and advocacy to

---

[9] See Defendants' Statement of Undisputed Facts, ¶ 7.

the mentally ill. The declaratory and injunctive relief that plaintiff requests includes not only Mr. Ford's records but also ready access to all records of qualified inmates in the future.

The defendants also have moved for summary judgment. In their motion, they claim that since the records of Mr. Ford have already been released by order of the court, the action is moot. It also claims that the complaint fails to state a constitutional violation.

## II. UNDISPUTED FACTS

In accordance with Uniform Local Rule 56.1, both parties have submitted a Statement of Material Facts in which it contends there are no material facts in dispute. Neither party has specifically denied the other party's stated facts, therefore, the following facts are admitted as being undisputed for the purpose of this motion:

<u>Plaintiff's Statement of Undisputed Material Facts:</u>
1. Plaintiff Advocacy Center is a non-profit corporation designated as an "eligible system" as those terms are used and defined in § 10802(2) of the PAIMI Act. Plaintiff provides protection and advocacy to people with mental illness. Under the PAIMI Act, Plaintiff has broad access rights to Defendants' inmates and facility records for the purpose of monitoring facility conditions and providing protection and advocacy services to specific inmates.
2. Defendant Richard Stalder is Secretary of the Louisiana Department of Public safety anc Corrections (hereinafter the "department"). He is responsible for the policies of the Department, and for the administration, control and operation of the functions, programs, and affairs of the Department, pursuant to L.R.S. §36:403. He is sued in his official capacity.

3. Defendant Kelly Ward is Warden of the David Wade Correctional Center, he is responsible for the operation and administration of the correctional center, He is sued in his official capacity.
4. David Wade Correctional Center is a "facility" as that term is used and defined in §10802(3) of the PAIMI Act.
5. In connection with all actions and omissions alleged herein, defendants were acting under color of state law.
6. On or about January 30, 19998, the Advocacy Center received a letter form William Ford, an inmate at David Wade Correctional Center, stating that his medication for his mental illness had been discontinued, and that his condition was deteriorating as a result.
7. Karen J. King, and attorney with the Advocacy Center, determined that she needed access to his medical and mental health records in order to investigate Mr. Ford's complaint and to advocate on his behalf. The Advocacy Center subsequently obtained Mr. Ford's written consent to the release of his records. On February 13, 1998, the Advocacy Center sent a letter to the Medical Director for David Wade Correctional Center, enclosing this consent, and requesting Mr. Ford's medical records.
8. Defendants refused to release the records to the Advocacy Center as requested, claiming that such records were confidential under the provisions of L.R.S. §15:574.12, and would not be released except to a court in camera, if a subpoena were sought.
9. The records were given to Plaintiff pursuant to a temporary restraining order issued in this case on July, 20, 1998.

Defendants' Statement of Undisputed Facts
1. Defendant Richard Stalder is the Secretary of the Department of Public Safety and Corrections.
2. Defendant, Kelly Ward is Warden for the David Wade Correctional Center.
3. William Ford, DOC # 98417, was an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections and was housed at David Wade Correctional Center, Homer, Louisiana.
4. The Advocacy Center sent David Wade Correctional Center a request for information regarding William Ford's mental illness.
5. On March 31, 1998, Kelly Ward, Warden, responded and denied this request due to the fact that psychiatric records were requested. Warden Ward advised that the records must be submitted in camera, in accordance with LSA-R.S. 15:572.12.
6. On April 14, 1998, the Advocacy Center made a request for said records to undersigned counsel [Roxie F. Goynes-Clark].
7. Sometimes thereafter, undersigned counsel spoke with Karen King, Attorney for the Advocacy Center, and explained that in accordance

       with LSA-R.S. 15:574.12, these records were confidential and that the Department must submit the records in camera.
8. Suit was filed on July 20, 1998, and Defendants provided Plaintiff with William Ford's medical and mental health records.
9. William Ford, DOC # 98417, was released from David Wade Correctional Center on diminution of sentence on February 12, 1999.

<u>Plaintiff's Statement of Additional Undisputed Material Facts</u>
1. On April 12, 1999, the Advocacy Center requested medical records from David Wade Correctional Center of six inmates who had complained to the Advocacy Center regarding their medical treatment.
2. Written consent for the Advocacy Center to access all records of each inmate was submitted along with the request.
3. Defendants have refused to grant the Advocacy Center access to these inmates' psychiatric records.
4. On April 13, 1999, the Advocacy Center received another complaint from an inmate housed at David Wade Correctional Center, regarding issues directly related to his mental health diagnosis and treatment. This inmate has consented to the release of his medical records to the Advocacy Center.
5. In order to evaluate these complaints and to provide these inmates with appropriate legal representation, the Advocacy Center needs to obtain their medical and mental health records from the Department of Corrections.
6. The Department of Corrections' policy of requiring a court to inspect inmates' mental health records before they can be released to the Advocacy Center is currently hampering its ability to provide prompt and effective representation to these inmates.

### III. JUSTICIABILITY OF CLAIM

The defendants claim that they have complied with the temporary restraining order and have continued to provide the Advocacy Center with the updated records of Mr. William Ford. They argue that since Mr. Ford is no longer an inmate within the Department of Public Safety and Corrections, there exists no case or controversy before this court. They contend the claim is moot since there is nothing left to

plaintiff's claim but a mere hypothetical allegation that there will be an ongoing problem.

The defendant's argument is without merit. First, the statutory scheme laid out in PAMII Act provides that and advocacy system has standing to bring a law suit requesting records.[10] The Advocacy Center has a statutory mandate to investigate allegations of abuse.[11] This duty includes receipt of records under certain circumstances.[12] If it is denied records of a patient it is representing or a claim it is investigating, it suffers a direct injury to its statutory interest. The Advocacy Center's statutory interest of investigating a claim is not confined to Mr. Ford's claim. The scope of the Advocacy Center investigation entails review of any claim made by a mentally ill inmate. Addressing only Mr. Ford's records, therefore, would not fully address the injury that the Advocacy Center suffers when the defendants fail to promptly release the records.

In addition, this court finds that if the dispute over whether state law is preempted by the PAMII Act is left unaddressed, then the actions of the defendant would be capable of repetition and would evade review.[13] To accept defendants'

---

[10] **Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center,** 894 F.Supp. 424 (M.D.Ala. 1995), affirmed, 97 F.3d 492 (11th Cir.1996).

[11] 42 U.S.C. §10805

[12] 42 U.S.C. §10806

[13] See **Southern Pacific Terminal Co. v. ICC**, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911);**Honig v. Doe**, 484 U.S. 305, 317-23, 108 S.Ct. 592, 601-04, 98 L.Ed.2d 686 (1988).

argument, would, in effect, preclude the Advocacy Center from ever obtaining the relief it requested without a court order first being obtained. Prompt access to records is necessary for the Advocacy Center to serve its clients, evaluate its clients' concerns, and determine whether a client has a legitimate claim.[14] To get the records of the inmates, the defendants maintain that, under state law and departmental policy, the Advocacy Center needs a court order. However, it cannot be disputed that the delay in getting a court order frustrates the goal of the PAMII Act. Furthermore, once there is a court order, the defendant could simply raise the JUSTICIABILITY issue again, leaving the Advocacy Center without a determination of it rights to prompt access to medical records.

Lastly, the temporary restraining order issued by this court does not moot the determination of plaintiff's rights to have access to Mr. Ford's records. In **Alabama Disabilities Advocacy Program v. Tarwarter**, 97 F.3d 492 (11th Cir.1996), a case involving the Developmental Disabilities Assistance and Bill of Rights Act, the Eleventh Circuit was confronted with a similar situation. In **Alabama Disabilities Advocacy Program**, the program brought an action against the defendant to gain access to the records of two patients who had died while they were in an Alabama mental health facility. After the district court held that the program was entitled to the records, the defendants appealed. Upon appeal, the Eleventh Circuit raised *sua*

---

[14]**Robbins**, 739 F. Supp. at 1487.

*sponte* the issue of whether the appeal was rendered moot due to the fact that the defendants had already complied with district court's order to grant the program access to the records of the patients.[15]

The court found that the issue was controlled by the Supreme Court decision of **Church of Scientology of California v. United States**, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992), which held that compliance with an enforcement order does not moot an appeal. In both **Alabama Disabilities Advocacy Program** and **Church of Scientology**, the court found that although the parties could not be returned to the "status quo ante", the court could effectuate a partial remedy by ordering the party to whom the records had been given to destroy or return any and all copies in their possession.[16]

For the above reasons, the court concludes that the case or controversy has not been mooted by the temporary restraining order directing the defendants to release the records of Mr. Ford.

### IV. VIOLATION OF 42 U.S.C. § 1983

Plaintiff alleges that the defendants, operating under color of state law, violated 42 U.S.C. §10805(a)(4)(A) of the PAMII, which states that a protection and advocacy center shall have "access to all records of any individual who is a client of

---

[15] Id.

[16] **Church of Scientology of California,** 506 U.S. at 11-12; **Alabama Disabilities Advocacy Program,** 97 F.3d at 495-496.

11

the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." The defendants disagree. They contend that there has been no constitutional violation, and §1983 is inapplicable.

First, an inmate has a constitutional right to access to the courts.[17] The Advocacy Center has a First Amendment right to communicate and consult with the population it was created to serve.[18] Timely access to records is essential for effective communications between the Advocacy center and its clients just as it is for other advocates and attorneys.[19] The Advocacy Center's allegations, therefore, do raise questions regarding constitutional violations by the defendant.

Second, a constitutional violation is not required in a § 1983 claim. In **Maine v. Thiboutot**, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court concluded that §1983 provides a cause of action for violations of federal statutes, not just the Constitution, under color of state law. Since **Thiboutot**, however, the Supreme Court has recognized that not every violation of a federal

---

[17]**Ward v. Kort**, 762 F.2d 856 (10th Cir.1985)

[18]**United Transportation v. Michigan Bar**, 401 U.S. 576, 580-81, 91 S.Ct. 1076, 1079-80, 28 L.Ed.2d 339 (1971).

[19]**Robbins**, 739 F.Supp. at 1487.

statute under color of state law is redressable under § 1983.[20] First, no §1983 cause of action for a violation of a federal statute will lie where "Congress has foreclosed such enforcement of the statute in the enactment itself."[21] Second, §1983 will not provide a cause of action for a violation of a federal statute where the federal statute in question does not "create enforceable rights, privileges, or immunities within the meaning of §1983."[22] Therefore, if defendants actions violate the PAMII Act, and neither of the exceptions apply, plaintiff may bring a cause of action under 42 U.S.C. §1983 regardless of an actual constitutional violation.

The PAMII Act is in itself void of any express statement by Congress which forecloses § 1983 action. Neither does the PAMII Act contain any comprehensive remedial scheme by which this court could imply an intent to foreclose § 1983 action. Quite the contrary, the PAMII Act, gives to an "eligible system" the right to pursue a legal remedy after the exhaustion of all available administrative remedies.[23] Also, if administrative remedies will not be resolved in a timely manner, the system may

---

[20] **Golden State Transit Corp. v. City of Los Angeles**, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989).

[21] **Wright v. City of Roanoke Redev. & Hous. Auth.**, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).

[22] See **Cannon v. Univ. of Chicago**, 441 U.S. 677, 703 (1979) (Court is "decidedly receptive" to the implication of a private cause of action if helpful to accomplishment of statute's purpose)

[23] 42 U.S.C. §10807

pursue a legal remedy.[24] Clearly, in this case, any remedy available to the Advocacy Center was exhausted, and therefore, under the Act, it could bring this action.

As stated above, the right to access records in this case is both a constitutional and statutory right of the Advocacy Center. The Advocacy Center may, in its own right, sue when an agency fails to comply with a request.[25] In this case, the denial of access occurred while the defendants were acting under the color of the state law. Therefore this court concludes that the Advocacy Center is not precluded from bringing a §1983 action against the defendants.

## V. VIOLATION OF THE PAMII

Having concluded that plaintiff has presented an actual case or controversy and that the Advocacy Center can assert a claim for violation of the PAMII under 42 U.S.C. § 1983, the court now moves to the merits of plaintiff's claim under the PAMII Act. In this case, the court must decided whether the PAMII Act preempts LSA-R.S. 15:574.12 and the Department of Public Safety's policy.[26]

---

[24] Id.

[25] **Alabama Disabilities Advocacy Program**, 894 F.Supp. 424

[26] LSA-R.S. 15:574.12(A) states:
The presentence investigation report, the pre-parole report, the clemency report, the information and data gathered by the staffs of the boards of pardons and parole, the prison record, and any other information obtained by the boards or the Department of Public Safety and Corrections, office of corrections services, in the discharge of their official duties shall be confidential and shall not be subject to public inspection nor be disclosed directly or indirectly to anyone except as provided by this Section.

14

The defendants argue that under LSA-R.S. 15:574.12, prison records are confidential and not subject to public inspection nor are they to be disclosed directly or indirectly to anyone unless subpoenaed. They argue that under the Department of Public Safety guidelines the release of psychiatric records can only be made, in the absence of a subpoena, by the Secretary on a case by case basis or after an in camera inspection by the court.[27] The defendants claim that the Advocacy Center is not denied access to records, but rather delayed access to insure the confidentiality of inmate records. They contend that under LSA-R.S. 15:574.12, they are not required to release.

The defendants, however, misconstrue the provisions of LSA-R.S. 574.12. This statute is concerned only with the confidentiality of inmate records and the dissemination of such records to the public. It does not require that a court inspect inmate records prior to release when the inmates consent. In this case, the confidentiality of the records would not be affected by releasing the records because the Advocacy Center has obtained the consent of the inmates. Additionally, under the PAMII Act, a protection and advocacy system must maintain the confidentiality of the records to the same extent as the provider of the service.[28] There is no reason to suspect that the confidentiality of the records will be breached.

---

[27] Louisiana Department of Safety Regulation B-06-001 and B-03-004.

[28] 42 U.S.C. § 10806(a).

Furthermore, as stated above, denying an inmate or his authorized agent access to his medical or mental health records violates the inmates constitutional rights to access of the courts and the Advocacy Center's right to communicate and consult with the population it was created to serve. Because the defendant's interpretation of LSA-R.S. 15:574.12 would result in a constitutional violation, this court need go no further in determining whether the PAMII Act preempts LSA-R.S. 15:574.12.

To the extent that the policies instituted by the defendant under the guise of LSA-R.S. 15:574.12 are in conflict with the PAMII Act, the court finds that such policies are preempted for the following reasons. First, the PAMII Act expressly preempts state law and second, the state law is preempted because it is in conflict with federal law.[29]

> Section 10806 (b)(2)(C) of the PAMII Act specifically states:
>
> "If the laws of a State prohibit an eligible system from obtaining access to the records of individuals with mental illness in accordance with section 10805(a)(4) of this title and this section, section 10805(a)(4) of this title and this section shall not apply to such system before--
> (i) the date such system is no longer subject to such a prohibition; or
> (ii) the expiration of the 2-year period beginning on May 23, 1986,
> whichever occurs first"

---

[29] **Silkwood v. Kerr-McGee Corp.**, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citations omitted) (emphasis added).**Blue Circle Cement, Inc. v. Board of County Commissioners of the County of Rogers**, 27 F.3d 1499, 1504 (10th Cir.1994).

16

This provision clearly expresses the intent of the Congress to preempt state laws or policies that prevent access to medical records by an "eligible system".

Additionally, the state policy of requiring *in camera* inspection by a court before releasing records to the Advocacy Center is clearly in conflict with the PAMII Act.. The PAMII Act requires that state agencies such as the Department of Public Safety and Corrections provide ready access to an institution's psychiatric records to ensure that the Act's mandate can be effectively pursued.[30] By forcing the Advocacy Center to obtain a court order every time it seeks to investigate, would, in effect, impede its ability to investigate a claim.[31] The PAMII Act requires "an 'effective' system of advocacy."[32] The authority to investigate would mean nothing and advocacy in the form of investigation would be ineffective if federal law would not preempt the Department's policy. Therefore, to the extent that the Department of Public Safety and Corrections' policy prohibits the Advocacy Center from obtaining inmate's treatment records, it is preempted by federal law.

---

[30]**Robbins**, 739 F. Supp. at 1487.

[31]**Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth Services,** Inc., 879 F.Supp. 1110 (N.D.Okla. 1995) ("The timely access guaranteed by the Act should not be stripped of all meaning by requiring advocacy hearings to survive an application for a court order.")

[32]See **Mississippi Protection & Advocacy System v. Cotten**, 929 F.2d 1054, 1058-59 (5th Cir.1991) (referring to the Developmental Disabilities and Bill of Rights Act)

For the reasons discussed above, the court holds that the PAMII Act preempts the state policy, and the defendants' failure to grant plaintiff access to its inmate's record constitutes a violation of federal law.

## VI. INJUNCTIVE RELIEF

In addition to a declaration of their rights to access records under the PAMII Act, the Advocacy Center also seeks injunctive relief restraining the defendants from interfering with its access to Mr. Ford's records as well as any other records that they may request in the future under the PAMII Act.

Because injunctive relief is an extraordinary remedy, such relief should be granted as an exception rather than as the rule.[33] In the absence of a compelling need, a party applying for a permanent injunction must prove not only the merits of its case but also the act complained of will take place if it were not for this remedy and any inequity suffered by the defendants is outweighed by the need for injunctive relief.[34]

In this case, the plaintiff has demonstrated that there is no adequate legal remedy available other than injunctive relief. The danger of a future violation is certainly cognizable. The temporary restraining order has not curtailed the

---

[33] **Mississippi Power & Light Co. v. United Gas Pipe Line Co.**, 760 F.2d 618, 621 (5th Cir.1985).

[34] **Younger v. Harris**, 401 U.S. 37, 43-44, 91 S.Ct. 746, 750-51, 27 L.Ed.2d 669 (1971); , **Ciba-Geigy Corp. v. Bolar Pharmaceutical Co.**, 747 F.2d 844, 850 (3rd Cir.1984) cert. denied 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985);

defendants' policy. Since Ford's claim was made, the Advocacy Center has been denied access to medical records of at least seven inmates of the David Wade Correctional Center who have complained to it about their medical and/or mental treatment. The defendants, again citing LSA-R.S 15:574.12 and the Department's policy, refused to grant the Advocacy Center's access to these records without a court order or an *in camera* inspection. To require the Advocacy Center to relitigate each time it seeks to obtain access to the records would impede the Advocacy Center's investigation and would defeat the purpose of the PAMII Act.

Furthermore, the court sees no harm that would come to the defendants by forcing them to comply with provisions of the PAMII Act, a law adopted by the national legislature. Issuance of a permanent injunction in this case does not subject the defendants to a penalty or a hardship since it requires them to do exactly what the act requires, i. e., to comply with the law.

### VII. CONCLUSION

Accordingly, the cross-motion for summary judgment by the defendants, Richard Stalder, Secretary of the Louisiana Department of Public Safety and Correction, and Kelly Ward, Warden of the David Wade Correctional Center (Docket No. 19) is hereby **DENIED**. The motion for summary judgment by the plaintiff, the Advocacy Center, (Docket No. 15) is hereby **GRANTED**.

The court declares that defendants' failure to grant plaintiff access to the records of William Ford and other inmates at the David Wade Correctional Facility violates plaintiff's rights under 42 U.S.C. §10805 (a) and 42 U.S.C. § 1983.

The defendants shall be **ENJOINED** and **RESTRAINED** from declining to release the records of William Ford or any other inmate at the David Wade Correctional Center when properly requested by the plaintiff for any purpose related to the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. § 10801, et seq.

In addition, the plaintiff is entitled to recover its attorneys' fees, costs, and expense in this action pursuant to 42 U.S.C § 1988. This action is hereby referred to a United States Magistrate Judge to determine reasonable attorney's fees.

Counsel for plaintiff shall prepare and submit a form of judgment for signature by the court.

Baton Rouge, Louisiana, July 30, 1999.

*[signature]*
JOHN V. PARKER,
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA